# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Briar's Creek Golf, LLC d/b/a<br>The Golf Club at Briar's Creek,<br><br>            Debtor. | Case No. 15-00712-jw<br><br>Chapter 11 |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING: (1) THE SALE OF ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. §365**

      Briar's Creek Golf, LLC d/b/a The Golf Club at Briar's Creek ("Debtor") hereby moves the Court (the "Motion") for entry of an order: (1) approving the terms of a proposed sale of substantially all of the Debtor's assets, including real estate, personal property, furniture, fixtures, equipment, inventory, vehicles, contracts, permits, intellectual property, goodwill, and all documents and rights relating thereto as more fully described in the Asset Purchase Agreement (the "APA") attached hereto as **Exhibit A**, to Briar's Creek Holdings, LLC, a Delaware limited liability company, or its assigns ("Purchaser"), free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. §363 for a purchase price of $11,300,000, which consists of $7,400,000 in cash and assumption of the $3,900,000 secured debt owed to Edward L. Myrick, Sr., plus assumption of the post-closing liabilities under the Debtor's executory contracts (the "Purchase Price"), and (2) authorizing the assumption and assignment of certain executory contracts pursuant to 11 U.S.C. §365.[1]  In connection with its acquisition of the assets under the APA, the Purchaser has also committed to provide $2,000,000 to the new club formed by the Purchaser for its operations and capital improvements.  The Debtor also hereby requests authority to distribute the Purchase Price to certain secured creditors as set forth below and to retain any remaining proceeds pending further order of the Court.  The proposed sale is subject to higher or otherwise better offers, on the same, or substantially similar terms, with such sale

---

[1] 11 U.S.C. §§ 101, *et seq.*, will hereinafter be referred to as the "Bankruptcy Code" and further references to sections of the Bankruptcy Code will be made by section number only.

being free and clear of liens, claims, encumbrances, and other interests, pursuant to 11 U.S.C. §§105 and 363. In support of the Motion, the Debtor represents as follows:

### Background

1. The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 9, 2015 (the "Petition Date"). The Debtor is operating its business and managing its assets as a debtor in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor is a private golf club on Johns Island, South Carolina with approximately 210 active members and is engaged in the business of operating its private golf club and developing its real property holdings.

3. The Debtor's assets consist primarily of real estate, specifically including an 18-hole golf course, practice facilities, a clubhouse, dining and country club facilities, golf maintenance and storage buildings, eight (8) developed lots, unimproved land for development, as well as personal property, including cash, accounts receivable, two vehicles, a boat and motor, furniture, fixtures, equipment, inventory, golf course chemicals and supplies, and prepaid insurance.

4. The Purchaser is an entity majority owned and controlled by Robert C. McNair ("McNair"), in which Edward L. Myrick, Sr. ("Myrick") and John D. Carifa ("Carifa") have a minority ownership interest. Mr. Carifa is the Chairman of Executive Committee of the Debtor. Mr. Myrick is one the secured creditors of the Debtor, who holds mortgages on the Debtor's real estate. Mr. McNair, Mr. Myrick, and Mr. Carifa own equity interests in the Debtor.

5. This proposed sale to the Purchaser is a sale of substantially all of the Debtor's assets, including real estate, personal property, furniture, fixtures, equipment, inventory, vehicles, contracts, permits, intellectual property, goodwill, and all documents and rights relating thereto as more fully described in the APA attached hereto as **Exhibit A**.[2] The assets being sold shall, hereinafter, be referred to as the "Purchased Assets."

6. This proposed sale does not include the Debtor's cash and cash equivalents, accounts receivable, tax refunds, corporate records, insurance policies, or any avoidance claims

---

[2] The APA and all of its exhibits are voluminous and therefore are not attached hereto. A copy of these documents is filed with the Court and publicly available via the Court's PACER website or may be obtained by request to Debtor's counsel at bmccarthy@mccarthy-lawfirm.com or dreynolds@mccarthy-lawfirm.com.

2

under Chapter 5 of the Bankruptcy Code. The assets excluded from the sale shall, hereinafter, be referred to as the "Excluded Assets."

### Description of Debt and Events Leading to Bankruptcy[3]

7. As of the Petition Date, the Debtor owes secured debt of approximately $2,851,000 to SouthCoast Community Bank ("SouthCoast") and approximately $3,891,000 to Myrick.

8. The Debtor has approximately 50 employees and owes its employees approximately $56,000 in unsecured, priority accrued vacation/paid time off claims as of the Petition Date. This amount may be reduced prior to closing through employees' use of such benefits.

9. As of the Petition Date, the Debtor believes it owes approximately 34 of its estimated 180 total trade vendors general unsecured claims in the approximate amount of $131,000 as well as another general unsecured claim in the approximate amount of $56,000. The Debtor has listed all of its trade vendors, including those that are not believed to have a claim, in its schedules for notice purposes.

10. The Debtor also owes general unsecured debts to approximately 41 golf club members for Patron Loans totaling approximately $2,906,000.

11. 204 of the Debtor's golf members paid a refundable membership deposit to the golf club at the time of joining. As of the Petition Date, the total amount of membership refunds for all members is approximately $23,522,350, comprised of approximately $8,865,000 asserted by 77 resigned members of the club and approximately $14,657,350 asserted by 127 non-resigned, refundable members.[4]

12. The Debtor also has approximately 43 lease agreements and executory contracts under which the Debtor has obligations to lessors and service providers. The Debtor was current on these obligations at the Petition Date and intends to remain current on such obligations post-petition. The full list of the Debtor's lease agreements and executory contracts is attached hereto as **Exhibit B**. By way of this Sale Motion, the Debtor seeks to assume all of the executory contracts upon entry of a final order approving the sale and to assign such contracts to the

---

[3] The Debts owed by the Debtor are set forth in more detail in the Debtor's schedules filed in this matter. The amounts set forth in this sale Motion are obtained from the Debtor's bankruptcy schedules, but nothing herein should be read to prejudice the Debtor or to prevent the Debtor from challenging or objecting to any claims it determines may be objectionable.

[4] Though they are not entitled to a refund of any membership deposit, there are also approximately 72 club members that joined the club as non-refundable members.

3

Purchaser or other successful bidder.

13.     As with many private golf club operators and golf property developers, the Debtor's gross revenues, coming in the form of membership fees, dues, usage fees, food and beverage sales, and pro shop sales in addition to land sales, have not been high enough to sustain its business.  Coinciding with the national economic downturn several years ago, members began resigning without the same number of corresponding new members joining the club.  The club tried a number of initiatives over the last several years, including allowing non-refundable members to join the club with lower up-front fees.  Additionally, the Debtor sought and obtained patron and founder member loans in order to sustain the business model on which the club operates.  Pre-petition, the Debtor explored various alternative financial arrangements and other sales opportunities.  The reduction in revenues and the realization that the club could not maintain its current course, led the Debtor to file for Chapter 11 protection with the objective of selling the assets of the club.

14.     Pre-petition, the Debtor's Executive Committee created a subcommittee to explore sales and other restructuring options and to make a recommendation to the full Executive Committee.  The proposed sale in this Motion was the recommendation of that subcommittee, which recommendation was subsequently approved by the Debtor's Executive Committee and the club's equity owners.  The Debtor and Purchaser also held a series of pre-petition meetings with the golf club members in which the Debtor described the filing of the bankruptcy and this sale and sought non-binding expressions of support from its founder, patron, and golf members.

### The Proposed Sale

15.     On February 10, 2015, the Debtor and Purchaser entered into the APA for the sale of the Purchased Assets.  The APA (**Exhibit A**) is incorporated herein by reference.

16.     The Purchaser agreed to pay an aggregate Purchase Price of approximately $11,300,000 plus assumption of the liabilities under the Debtor's executory contracts for the Purchased Assets.  As set forth in greater detail in the APA, the Purchase Price is primarily comprised of $7,400,000 in cash consideration, assumption of the approximately $3,900,000 Myrick secured debt, and assumption of all of the post-closing liabilities owed under the Debtor's leases and executory contracts.[5]  The Purchaser has also agreed that, after closing, it will provide $2,000,000 to the Purchaser's new club for its operations and capital improvements.

---

[5] The APA includes a number of relatively minor credits and adjustments to the Purchase Price at the date of closing, which are not fully described herein.

4

17. The proposed Sale to the Purchaser is subject to completion of the Due Diligence Period under the APA, which is defined as beginning on the Effective Date of the APA (the date the APA was executed) and extending until the tenth (10th) day after the Purchaser's receipt of the Phase 1 environmental study the Purchaser has ordered for the real estate, but no later than March 31, 2015.

18. The closing of this proposed sale is scheduled to occur no later than fourteen (14) business days following the date that the Bankruptcy Court has entered a final order approving the sale, provided that all conditions precedent under the APA have been satisfied or waived. However, in no event shall the closing occur later than June 30, 2015 without the consent of the Purchaser.

19. Upon sale closing, Purchaser will assume the Myrick secured debt and the post-closing liabilities under the executory contracts. To the extent that any executory contracts are disguised sale and security agreements, such creditors will maintain any lien they have in and to Purchased Assets.

20. In order to effectuate the sale, the Debtor hereby requests authority to use sale proceeds to pay the approximately $2,851,000 secured claim of SouthCoast in full at closing.

21. The Debtor proposes that remaining proceeds of the sale be held pending further order of the Court or until confirmation of the Debtor's Plan of Liquidation, which the Debtor intends to file on or about the same day as this sale Motion.

22. The Debtor has simultaneously with this Motion submitted a motion requesting an order (the "Bid Procedures Order") approving bidding and sale procedures governing the sale of the Purchased Assets and requesting protections for the Purchaser, including payment to the Purchaser to reimburse it for costs incurred and to compensate it for its time and efforts in this sale of the Purchased Assets, in the event the Purchased Assets are sold to another buyer who has outbid the Purchaser. The APA provides that the Purchaser will be entitled to payment from the sale proceeds of the Purchased Assets of (1) an amount to reimburse the Purchaser for due diligence costs incurred by the Purchaser (subject to appropriate documentation) in presenting and proceeding with its offer and the proposed transactions under the APA, and (2) a break-up fee of $75,000.00 to compensate the Purchaser for its time and efforts (such costs and the break-up fee collectively being defined in the APA as the "Due Diligence Reimbursement Fee"), which Due Diligence Reimbursement Fee shall not exceed $250,000.00 unless approved by the Court, and which payment shall be made at the closing of the sale of the Purchased Assets. Upon entry

of a Bid Procedures Order by the Court, the Debtor will serve the Bid Procedures Order on all creditors and parties in interest and all known parties that have expressed an interest in purchasing the Purchased Assets.

23. Based upon the foregoing and because the Debtor determined that the Purchase Price is fair and reasonable, the Debtor is informed and believes that is in its best interest and that of its creditors and club members to accept the Purchaser's offer, subject to court approval.

I. **REQUEST FOR APPROVAL OF THE SALE OF THE ASSETS**

24. Section 363(b) of the Bankruptcy Code authorizes the Debtor to sell property of the estate outside the ordinary course of business after notice and a hearing. Such property can be sold free and clear of any interest in the property if each party holding such an interest consents. 11 U.S.C. §363(f). Sales of property under 11 U.S.C. §363(f) are limited to sales of property of the estate. In re Taylor, 198 B.R. 142, 158 (Bankr. D.S.C. 1996). In the present case, the Assets are owned by the Debtor, and upon information and belief, the secured creditors consent to this sale.

25. The Debtor seeks the Court's authorization to sell the Assets pursuant to Section 363(b)(1) and (f), outside the ordinary course of business, at or prior to a hearing on confirmation of its plan of reorganization. Although courts prefer that sales be conducted pursuant to a plan of reorganization, this Court has recognized that when a sound business justification exists, it may authorize a sale pursuant to Section 363(b)(1) without a confirmed plan of reorganization. In re Taylor, 198 B.R. 142, 156-157 (Bankr. D.S.C. 1996); see also Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re WBQ Partnership, 189 B.R. 97 (Bankr. E.D. Va. 1995).

26. Under the sound business purpose test, the Debtor has the burden of proving that:
    a. sound business reason or emergency justifies a pre-confirmation sale;
    b. the sale has been proposed in good faith;
    c. adequate and reasonable notice of the sale has been provided to interested parties; and
    d. the purchase price is fair and reasonable.

In re Taylor, 198 B.R. at 157.

    A. **Sound Business Reason or Emergency**

27. In the present case, sound business judgment and an emergency situation warrant the sale of the Purchased Assets at or prior to confirmation of the Debtor's Plan. The Debtor

6

operates in the private golf club industry, and is unable to sustain its operations over a long period of time under its current business model. As shown by the Patron Loans made to enable the Debtor to continue operating, the Debtor's revenues are not sufficient to cover its operating costs. Moreover, given the already high price point of membership in the Debtor's club within the relevant market, further increases in dues and fees would encourage more member resignations. If this sale is not consummated quickly and smoothly, the Debtor will not be able to meet its operating expenses, including debt service. Absent the approval of a sale, the Debtor will be unable to attract necessary new members or even to maintain its current membership levels, which risks the Debtor's ability to continue in operation. Any shutdown in the Debtor's operations would greatly decrease the value of debtor's assets and generate a smaller recovery for the Debtor's creditors. Furthermore, if the Debtor's business operations were to cease it is believed that property values in the surrounding community, including the developed lots and undeveloped land held by the Debtor, will diminish significantly in the aggregate. Finally, it is important to note that a shut-down of the Debtor's business would result in the layoff of its approximately 50 employees.

B.    **Good Faith**

28.    The Debtor believes the terms and conditions of the proposed sale are fair, reasonable and appropriate and were reached after arms-length negotiations and extensive bargaining between the Debtor's Executive Committee and professionals with representatives of the Purchaser. The Debtor sought third party purchase offers pre-petition, and further proposes to submit this sale to advertisement and competitive bidding over a period of approximately 65 days prior to an auction/sale Hearing on this Motion. The Debtor believes, and will further show at the hearing on this Motion, that the Debtor and Purchaser are proceeding in good faith. As such, the Purchaser is further seeking the protections afforded to sale transactions under Section 363(m) of the Bankruptcy Code.

C.    **Notice**

29.    All creditors and parties in interest, including those parties who may have expressed an interest in purchasing the Purchased Assets or those that the Debtor contacted in that regard pre-petition, will be served a copy of this Motion, a bid procedures order, and the notice or order setting the hearing on this Motion. Also, the Debtor and the Purchaser held a series of pre-petition meetings in which the Debtor notified its golf club members of its intention

to file this bankruptcy and propose approval of this sale. The Debtor expended significant efforts to market its business and assets pre-petition, and will also advertise this proposed sale post-petition. Any potential purchaser may view a full accounting of the Purchased Assets, subject to the execution of a confidentiality agreement where appropriate. Based upon the foregoing, the Debtor believes that notice of this sale is adequate and reasonable.

    D.    **Purchase Price**

30.    The Debtor submits to the Court that in its business judgment the Purchase Price for the Purchased Assets is fair and reasonable and currently represents the highest and best recovery for the Debtor's creditors and golf club members. Prior to receiving an APA from Purchaser, the Debtor worked diligently to locate a purchaser for the business. The sale of the Assets to the Purchaser will be subject to higher or otherwise better competing offers after further advertisement and will be conducted under fair procedures proposed by the Debtor in a Bid Procedures Order to be reviewed and approved by this Court. Furthermore, an auction will be conducted for the Assets at or prior to the hearing on this Motion. The Debtor will select the successful bidder for the Assets at auction after determining that a bid represents the highest and best offer for such assets. The Debtor may consult with other interested parties as to the determination of the highest and best offer. A copy of the Bid Procedures Order entered by this Court will be provided to all creditors and interested parties in this matter, including all known parties that, pre-petition or during the course of this Chapter 11 proceeding, have expressed an interest in purchasing the Purchased Assets. Based upon the foregoing, Debtor believes that the proposed sale is in the best interests of the estate and its creditors.

31.    Federal Rule of Bankruptcy Procedure 6004(h) provides that an order authorizing the use, sale or lease of property will be stayed for fourteen (14) days after entry of the approved order unless the Court orders otherwise. Because of the Debtor's need to move promptly and maximize the return to creditors, and because the Debtor has sought entry of a finding pursuant to 11 U.S.C. §363(m), the Debtor requests that the proposed sale be approved and that the Court waive the fourteen (14) day stay of Federal Rule of Bankruptcy Procedure 6004(h).

32.    Pursuant to its Bid Procedures Motion and proposed Bid Procedures Order in this matter, the Debtor further requests that the Court approve a back-up bid from any Qualified Competing Bidders, so that in the event the sale to the successful bidder at auction is not consummated, the Debtor may sell the Assets to the back-up bidder without the need for further Court approval.

II.  **REQUEST FOR APPROVAL OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

33. Section 365(a) provides that a debtor in possession "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the Debtor." 11 U.S.C. § 365(a). Section 365(b) requires such debtor in possession to satisfy certain requirements, such as curing defaults, compensation for pecuniary loss and adequate assurance of future performance, at the time of assumption if a default exists under the contracts to be assumed. See 11 U.S.C. § 365(b)(1)(A)-(C).

34. By way of this Sale Motion, the Debtor seeks to assume the executory contracts set forth in the attached **Exhibit B** upon entry of a final order approving the sale and to assign such contracts to the Purchaser or other successful bidder. The Debtor believes that **Exhibit B** is a complete list of all of its executory contracts and unexpired leases.

35. The standard applied to determine whether the assumption or rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard. See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043 (4th Cir. 1985).

36. The Debtor and Purchaser will show that the Purchaser can provide for the adequate assurance of future performance of the executory contracts and leases to be assigned as part of this sale. As of the Petition Date, Debtor is current on payment for all its executory contract obligations and intends to remain current on all such obligations. **The Debtor believes and asserts that there are no defaults under the executory contracts that are required to be cured pursuant to Section 365(b)(1)(A) in connection with the assumption by the Debtor of such Contracts.** It is the Debtors' position that no cure is required to be paid in connection with the assumption of such contracts pursuant to § 365(b).

37. This Motion is intended to serve as notice of the Debtor's intention to assume the executory contracts shown on **Exhibit B**, and to assign such contracts to the Purchaser or such other successful bidder for the Purchased Assets. **Failure to file a return, response, and/or objection to this Motion will bind parties regarding cure amounts and prohibit any future claims against the Debtor related to the assumed and assigned Contracts**.

38. Federal Rule of Bankruptcy Procedure 6006(d) provides that an order authorizing the assignment of an executor contract or unexpired lease under 11 U.S.C. §365 will be stayed for fourteen (14) days after entry of the approved order unless the Court orders otherwise. Because of the Debtor's need to move promptly and maximize the return to creditors, and

because the Debtor has sought entry of a finding pursuant to 11 U.S.C. §363(m) and given ample notice of this Sale Motion, the Debtor requests that the proposed sale be approved and that the Court waive the fourteen (14) day stay of Federal Rule of Bankruptcy Procedure 6006(d).

WHEREFORE, the Debtor respectfully requests that the Court: (i) approve the sale of the Purchased Assets pursuant to the terms and conditions of the APA; (ii) authorize the sale of the Purchased Assets by the Debtor to Purchaser, or any other successful bidder if Purchaser is not the successful bidder for the Assets, pursuant to Section 363(b)(1) and (f) of the Bankruptcy Code, with such sale being free and clear of liens, claims, encumbrances, and other interests as set forth herein above, (iii) waive the fourteen (14) day stay of Federal Rule of Bankruptcy Procedure 6004(h), (iv) approve a back up bid, (v) authorize the assumption of debt and corresponding distribution of sales proceeds to secured creditors as set forth herein above, (vi) waive the fourteen (14) day stay of Federal Rule of Bankruptcy Procedure 6006(d); (vii) authorize Debtor's counsel to hold the remaining sales proceeds pending further order of this Court or confirmation of a plan, (viii) authorize the assumption and assignment of the executory contracts as set forth herein, or as may be required by the successful bidder as an essential part of any sale, and (ix) grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this the 10th day of February 2015, at Columbia, South Carolina.

    MCCARTHY LAW FIRM, LLC

By:    /s/ Daniel J Reynolds, Jr.
G. William McCarthy, Jr., I.D.#2762
Daniel J. Reynolds, Jr., I.D.#9232
W. Harrison Penn, I.D.#11164
Attorneys for the Debtor
1517 Laurel Street
P.O. Box 11332
Columbia, SC 29201-1332
(803) 771-8836 (Phone)
(803) 753-6960 (Fax)
dreynolds@mccarthy-lawfirm.com