# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Briar's Creek Golf, LLC d/b/a<br>The Golf Club at Briar's Creek,<br><br>             Debtor. | Case No. 15-00712-jw<br><br>Chapter 11 |

**ORDER AUTHORIZING: (1) THE SALE OF ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. §365**

     The relief set forth on the following pages, for a total of 12 pages including this page, but excluding exhibits, is hereby **ORDERED**.

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Briar's Creek Golf, LLC d/b/a<br>The Golf Club at Briar's Creek,<br><br>Debtor. | Case No. 15-00712-jw<br><br>Chapter 11 |

**ORDER AUTHORIZING: (1) THE SALE OF ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. § 363; AND (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. §365**

THIS MATTER came before the Court for hearing on motion (the "Sale Motion") of Briar's Creek Golf, LLC d/b/a The Golf Club at Briar's Creek ("Debtor") for entry of an order: (1) approving the terms of a proposed sale of substantially all of the Debtor's assets, including real estate, personal property, furniture, fixtures, equipment, inventory, vehicles, contracts, permits, intellectual property, goodwill, and all documents and rights relating thereto as more fully described in the Asset Purchase Agreement (the "APA") attached hereto as **Exhibit A**, to Briar's Creek Holdings, LLC, a Delaware limited liability company, or its assigns ("Purchaser"), free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. §363 for a purchase price of $11,300,000, which consists of $7,400,000 in cash and assumption of the $3,900,000 secured debt owed to Edward L. Myrick, Sr., plus assumption of the post-closing liabilities under the Debtor's executory contracts, and (2) authorizing the assumption and assignment of certain executory contracts pursuant to 11 U.S.C. §365.[1] In connection with its acquisition of the assets under the APA, the Purchaser has also committed to provide $2,000,000 to the new club formed by the Purchaser for its operations and capital improvements. Copies of the Sale Motion, Notice of Hearing, and Order Establishing Bidding and Other Procedures in Connection with the Sale of Debtor's Assets and Granting Protections to the Proposed Purchaser ("Bid Procedures Order") were served on all creditors, parties in interest, and all parties that had expressed an interest in purchasing the Debtor's assets pre-petition.

---

[1] 11 U.S.C. §§ 101, *et seq.*, will hereinafter be referred to as the "Bankruptcy Code" and further references to sections of the Bankruptcy Code will be made by section number only.

2

After considering the Sale Motion, any and all responses and objections filed thereto, and the arguments and evidence presented by counsel at the hearing on the Sale Motion, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT[2]

**Background**

1.  The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 9, 2015 (the "Petition Date"). The Debtor is operating its business and managing its assets as a debtor in possession pursuant to §§ 1107(a) and 1108.

2.  The Debtor is a private golf club on Johns Island, South Carolina with approximately 210 active members and is engaged in the business of operating its private golf club and developing its real property holdings.

3.  The Debtor's assets consist primarily of real estate, specifically including an 18-hole golf course, practice facilities, a clubhouse, dining and country club facilities, golf maintenance and storage buildings, eight (8) developed lots, unimproved land for development, as well as personal property, including cash, accounts receivable, two vehicles, a boat and motor, furniture, fixtures, equipment, inventory, golf course chemicals and supplies, and prepaid insurance.

4.  The Purchaser is an entity majority owned and controlled by Robert C. McNair ("McNair"), in which Edward L. Myrick, Sr. ("Myrick") and John D. Carifa ("Carifa") have a minority ownership interest. Mr. Carifa is the Chairman of Executive Committee of the Debtor. Mr. Myrick is one the secured creditors of the Debtor, who holds mortgages on the Debtor's real estate. Mr. McNair, Mr. Myrick, and Mr. Carifa own equity interests in the Debtor.

5.  This sale to the Purchaser is a sale of substantially all of the Debtor's assets, including real estate, personal property, furniture, fixtures, equipment, inventory, vehicles, contracts, permits, intellectual property, goodwill, and all documents and rights relating thereto as more fully described in the APA attached hereto as **Exhibit A**. The assets being sold shall, hereinafter, be referred to as the "Purchased Assets."

6.  This sale does not include the Debtor's cash and cash equivalents, accounts receivable, tax refunds, corporate records, insurance policies, or any avoidance claims under

---

[2] To the extent that any "Finding of Fact" in this Order constitutes a "Conclusion of Law," or that any "Conclusion of Law" constitutes a "Finding of Fact," such findings and conclusions in this Order shall be deemed as such and treated as though they are set forth under the appropriate heading.

3

Chapter 5 of the Bankruptcy Code. The assets excluded from the sale shall, hereinafter, be referred to as the "Excluded Assets."

7. As of the Petition Date, the Debtor owes secured debt of approximately $2,851,000 to SouthCoast Community Bank ("SouthCoast") and approximately $3,891,000 to Myrick.

8. The Debtor has approximately 50 employees and owed its employees approximately $56,000 in unsecured, priority accrued vacation/paid time off claims as of the Petition Date. This amount has likely been be reduced since the Petition Date through employees' use of such benefits.

9. As of the Petition Date, the Debtor believes it owed its approximately 34 of its estimated 180 total trade vendors general unsecured claims in the approximate amount of $131,000 as well as another general unsecured claim in the approximate amount of $56,000.

10. It also appears that the Debtor owed general unsecured debts to approximately 41 golf club members for Patron Loans in the approximate amount of $2,906,000.

11. It appears that 204 of the Debtor's golf members paid a refundable membership deposit to the golf club at the time of joining. As of the Petition Date, the total amount of membership refunds for all members appears to be approximately $23,522,350, comprised of approximately $8,865,000 asserted by 77 resigned members of the club and approximately $14,657,350 asserted by 127 non-resigned, refundable members.[3]

12. The Debtor also appears to have approximately 43 lease agreements and executory contracts under which the Debtor has obligations to lessors and service providers. It appears that the Debtor was current on these obligations at the Petition Date and has remained current on such obligations post-petition. The full list of the Debtor's lease agreements and executory contracts is attached hereto as **Exhibit B**. By way of the Sale Motion, the Debtor seeks to assume all of the executory contracts and to assign such contracts to the Purchaser or other successful bidder.

13. As with many private golf club operators and golf property developers, it appears that the Debtor's gross revenues, coming in the form of membership fees, dues, usage fees, food and beverage sales, and pro shop sales in addition to land sales, have not been high enough to sustain its business. Coinciding with the national economic downturn several years ago, the Debtor's members began resigning without the same number of corresponding new members joining the club. The Debtor tried a number of initiatives over the last several years, including allowing non-refundable members to join the club with lower up-front fees. Additionally, the Debtor sought and obtained patron and founder member loans in order to sustain the business

---

[3] Though they are not entitled to a refund of any membership deposit, there are also approximately 72 club members that joined the club as non-refundable members.

4

model on which the club operated. Pre-petition, the Debtor explored various alternative financial arrangements and other sales opportunities. The reduction in revenues and the realization that the club could not maintain its current business, led the Debtor to file for Chapter 11 protection with the objective of selling the assets of the club.

14. It appears that, pre-petition, the Debtor's Executive Committee created a subcommittee to explore sales and other restructuring options and to make a recommendation to the full Executive Committee. The proposed sale set forth in the Sale Motion appears to have been the recommendation of that subcommittee, which recommendation was subsequently approved by the Debtor's Executive Committee and the club's equity owners. The Debtor and Purchaser also held a series of pre-petition meetings with the golf club members in which the Debtor described the filing of the bankruptcy and this sale and sought non-binding expressions of support from its founder, patron, and golf members.

**The Proposed Sale**

15. On February 10, 2015, the Debtor and Purchaser entered into the APA for the sale of the Purchased Assets. The APA (**Exhibit A**) is incorporated herein by reference.

16. The Purchaser agreed to pay an aggregate purchase price of approximately $11,300,000 plus assumption of the liabilities under the Debtor's executory contracts (the Purchase Price") for the Purchased Assets. As set forth in greater detail in the APA, the Purchase Price is primarily comprised of $7,400,000 in cash consideration, assumption of the approximately $3,900,000 Myrick secured debt, and assumption of all of the post-closing liabilities owed under the Debtor's leases and executory contracts.[4] The Purchaser has also agreed that, after closing, it will provide $2,000,000 to the Purchaser's new club for its operations and capital improvements.

17. The proposed Sale to the Purchaser was subject to completion of the Due Diligence Period under the APA, which is defined as beginning on the Effective Date of the APA (the date the APA was executed) and extending until the tenth (10th) day after the Purchaser's receipt of the Phase 1 environmental study the Purchaser has ordered for the real estate, but no later than March 31, 2015. The Due Diligence was completed prior to entry of this order.

18. The closing of this proposed sale is scheduled to occur no later than fourteen (14) business days following the date that the Bankruptcy Court has entered a final order approving the sale, provided that all conditions precedent under the APA have been satisfied or waived. However, in no event shall the closing occur later than June 30, 2015 without the consent of the

---

[4] The APA includes a number of relatively minor credits and adjustments to the Purchase Price at the date of closing, which are not fully described herein.

5

Purchaser.

19. Upon sale closing, the Purchaser will assume the Myrick secured debt and the post-closing liabilities under the Debtor's executory contracts. To the extent that any executory contracts are disguised sale and security agreements, such creditors shall maintain any lien they have in and to Purchased Assets.

20. In order to effectuate the sale, the Debtor has requested authority to use sale proceeds to pay the approximately $2,851,000 secured claim of SouthCoast in full at closing.

21. The Debtor proposed that remaining proceeds of the sale be held pending further order of the Court or until confirmation of the Debtor's Plan of Liquidation (the "Debtor's Plan"), which the Debtor filed on or about the same date as the Sale Motion.

22. The Debtor simultaneously with the Sale Motion submitted a motion requesting an order approving bidding and sale procedures governing the sale of the Purchased Assets and requesting protections for the Purchaser, including payment to the Purchaser to reimburse it for costs incurred and to compensate it for its time and efforts in this sale of the Purchased Assets, in the event the Purchased Assets were sold to another buyer who outbid the Purchaser. A bid procedures order ("Bid Procedures Order") approving bidding and sale procedures governing the sale of the Purchased Assets and requesting protections for the Purchaser was entered by this Court on February ____, 2015.

23. The APA and Bid Procedures Order provide that the Purchaser will be entitled to payment from the sale proceeds of the Purchased Assets of (1) an amount to reimburse the Purchaser for due diligence costs incurred by the Purchaser (subject to appropriate documentation) in presenting and proceeding with its offer and the proposed transactions under the APA, and (2) a break-up fee of $75,000.00 to compensate the Purchaser for its time and efforts (such costs and the break-up fee collectively being defined in the APA as the "Due Diligence Reimbursement Fee"), which Due Diligence Reimbursement Fee shall not exceed $250,000.00 unless approved by the Court, and which payment shall be made at the closing of the sale of the Purchased Assets.

24. Based upon the foregoing and because the Debtor determined that the Purchase Price was fair and reasonable, the Debtor is informed and believes that is in its best interest and that of its creditors and club members to accept Purchaser's offer, subject to this Court's approval.

**The Assumption/Assignment of Executory Contracts**

25. As part of the Sale Motion, the Debtor also requested authority to assume the executory contracts set forth in the attached **Exhibit B** upon entry of a final order approving the sale and to assign such assumed contracts to the Purchaser or other successful bidder. It appears

6

that **Exhibit B** is a complete list of all of the Debtor's executory contracts and unexpired leases.

## CONCLUSIONS OF LAW

**I.     The Sale**

26.     Section 363(b) of the Bankruptcy Code authorizes the Debtor to sell property of the estate outside the ordinary course of business after notice and a hearing.  Such property can be sold free and clear of any interest in the property if each party holding such an interest consents. 11 U.S.C. § 363(f).  Sales of property under § 363(f) are limited to sales of property of the estate. In re Taylor, 198 B.R. 142, 158 (Bankr. D.S.C. 1996).  In the present case, the Purchased Assets are owned by the Debtor, and upon information and belief, the secured creditors consent to this sale or will retain their lien.

27.     The Debtor seeks the Court's authorization to sell the Purchased Assets pursuant to § 363(b)(1) and (f), outside the ordinary course of business, at or prior to a hearing on confirmation of its plan of reorganization.  Although courts prefer that sales be conducted pursuant to a plan of reorganization, this Court has recognized that when a sound business justification exists, it may authorize a sale pursuant to § 363(b)(1) without a confirmed plan of reorganization. In re Taylor, 198 B.R. 142, 156-157 (Bankr. D.S.C. 1996); see also Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re WBQ Partnership, 189 B.R. 97 (Bankr. E.D. Va. 1995).

28.     Under the sound business purpose test, the Debtor has the burden of proving that:
   a. sound business reason or emergency justifies a pre-confirmation sale;
   b. the sale has been proposed in good faith;
   c. adequate and reasonable notice of the sale has been provided to interested parties; and
   d. the purchase price is fair and reasonable.

See In re Taylor, 198 B.R. at 157.

A.     **Sound Business Reason or Emergency**

29.     In the present case, sound business judgment and an emergency situation warrant the sale of the Purchased Assets at or prior to confirmation of the Debtor's Plan.  The Debtor operates in the private golf club industry, and is unable to sustain its operations over a long period of time under its current business model. As shown by the Patron Loans made to enable the Debtor to continue operating, the Debtor's revenues are not sufficient to cover its operating costs. Moreover, given the already high price point of membership in the Debtor's club within the relevant market, further increases in dues and fees would encourage more member resignations.  If

this sale is not consummated quickly and smoothly, the Debtor will not be able to meet its operating expenses, including debt service.  Absent the approval of a sale, the Debtor will be unable to attract necessary new members or even to maintain its current membership levels, which risks the Debtor's ability to continue in operation.  Any shutdown in the Debtor's operations would greatly decrease the value of debtor's assets and generate a smaller recovery for the Debtor's creditors.  Furthermore, if the Debtor's business operations were to cease it is believed that property values in the surrounding community, including the developed lots and undeveloped land held by the Debtor, will diminish significantly in the aggregate.  Finally, it is important to note that a shutdown of the Debtor's business would result in the layoff of its approximately 50 employees.

  B. **Good Faith**

  30. The Court finds that the terms and conditions of the proposed sale are fair, reasonable and appropriate and were reached after arms-length negotiations and extensive bargaining between the Debtor's Executive Committee and professionals with representatives of the Purchaser.  The Debtor sought third party purchase offers pre-petition, and submitted this sale to advertisement and competitive bidding over a post-petition period of approximately 65 days prior to the auction and sale hearing.  The Debtor asserted at the hearing on the Sale Motion that the Debtor and Purchaser proceeded in good faith.  As such, the Purchaser seeks the protections afforded to sale transactions under § 363(m).  Consequently, the Court finds that the Purchaser is entitled to the protections afforded to sale transactions under § 363(m).

  C. **Notice**

  31. All creditors and parties in interest, including those parties who may have expressed an interest in purchasing the Purchased Assets or those that the Debtor contacted in that regard pre-petition, were served a copy of the Sale Motion, the Bid Procedures Order, and the notice or order setting the hearing on the Sale Motion.  Also, the Debtor and the Purchaser held a series of pre-petition meetings in which the Debtor notified its golf club members of its intention to file this bankruptcy and propose approval of this sale.  The Debtor expended significant efforts to market its business and assets pre-petition, and has advertised this proposed sale at length post-petition.  Any potential purchaser was afforded the opportunity to view a full accounting of the Purchased Assets, subject to the execution of a confidentiality agreement where appropriate.  Based upon the foregoing, the Court finds that notice is adequate and reasonable.

  D. **Purchase Price**

  32. The Court finds that the Purchase Price for the Purchased Assets is reasonable and fair and currently represents the highest and best recovery for the Debtor and its creditors.  Prior to

receiving an APA from Purchaser, the Debtor worked diligently to locate a purchaser for the business.  The sale of the Purchased Assets to the Purchaser was subject to higher or otherwise better competing offers under fair procedures approved by this Court, and Purchaser's offer was the highest and best offer.  Based upon the foregoing, the Court finds that the sale is in the best interests of the estate and its creditors.

## II.     The Assumption of Executory Contracts

33.     Section 365(a) provides that a debtor in possession "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the Debtor."  11 U.S.C. § 365(a).  Section 365(b) requires a debtor in possession to satisfy certain requirements, such as curing defaults, compensation for pecuniary losses and adequate assurance of future performance, at the time of assumption if a default exists under the contracts to be assumed.  See 11 U.S.C. § 365(b)(1)(A)-(C).

34.     By way of the Sale Motion, the Debtor sought to assume the executory contracts set forth in the attached **Exhibit B** (the "Assigned Contracts") upon entry of a final order approving the sale and to assign such contracts to the Purchaser or other successful bidder.  **Exhibit B** appears to be a complete list of all of the Debtor's executory contracts and unexpired leases.

35.     The standard applied to determine whether the assumption or rejection of an executory contract or unexpired lease should be authorized is the "business judgment" standard.  See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043 (4th Cir. 1985).

36.     The Debtor appears to have served the Motion and Notice of Hearing on all creditors and parties in interest in this matter pursuant to the certificate of service filed herein by counsel for the Debtor.  It appears that the Debtor has given adequate notice of its intention to assume/assign these Assigned Contracts set forth on **Exhibit B**.  It further appears that the Debtor has, in connection with the proposed sale, exercised reasonable business judgment with regard to the assumption and assignment of its executory contracts.

37.     The Debtor's Sale Motion asserts that the Debtor is current on payment for all of its executory contract obligations and intends to remain current on all such obligations, and no party has appeared to assert anything to the contrary.  Therefore, the Debtor has satisfied the requirements of § 365, including §§ 365(b)(1)(A) and (B) and 365(f), in connection with the Sale and the assumption and assignment of the executory contracts.  The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to § 365(b)(1)(C).  The assumption and assignment of the Assigned Contracts pursuant to the terms of

this Order is integral to the APA and is in the best interests of the Debtor, its estate, creditors and other parties-in-interest thereof, and represents the exercise of sound and prudent business judgment by the Debtor.

Based upon the foregoing findings and conclusions, it is hereby

**ORDERED** that:

A.    The Sale Motion is GRANTED, and the Debtor is authorized to proceed with the closing of the Sale of the Purchased Assets to Purchaser in accordance with the terms of this order and the terms of the APA attached hereto as **Exhibit A**.

B.    The Purchaser is authorized to assume the approximately $3,900,000 Myrick secured debt and the liabilities under the Debtor's executory contracts as set forth herein.

C.    The Debtor is authorized to use sale proceeds to pay the approximately $2,851,000 secured claim of SouthCoast in full at closing.

D.    The Debtor shall hold all remaining sale proceeds pending confirmation of the Debtor's Plan or further order(s) of the Court.

E.    The terms and conditions of, and the transactions contemplated by, the APA, are hereby approved in all respects; the sale and all related transactions contemplated thereby are hereby approved, authorized and directed under §363.  To the extent a conflict arises between the Sale Motion, the APA, or any other documents related to the sale of the Purchased Assets, and this order, this Order shall control.

F.    Pursuant to §363(b) the Debtor is hereby authorized, directed and empowered to fully assume, perform under, consummate and implement the APA together with all additional instruments and documents that may be reasonably necessary and desirable to implement the APA and the related transactions contemplated thereby, and to take all further actions as may be reasonably requested for the purpose of assigning, transferring, granting, conveying and conferring the Purchased Assets to the Purchaser, or otherwise as may be appropriate to the performance to the Debtor's obligations as contemplated by the APA.

G.    Except as, and unless, expressly provided or exempted in the Sale Motion, the APA or this Order, the Purchaser shall not be liable for any further claims, debts, liabilities or obligations of the Debtor whatsoever, whether known or unknown, foreseeable or unforeseeable, contingent, fixed, liquidated, unliquidated or otherwise.

H.    Except as to those assets being sold subject to existing liens as set forth hereinabove and pursuant to the Sale Motion and APA, the sale of the Purchased Assets shall be

free and clear of liens, claims, interests and encumbrances pursuant to § 363(f), and the Purchaser shall have no responsibility with respect to such liens, claims, interests or encumbrances, whether legal, equitable or possessory, other than those being expressly assumed by Purchaser. Upon the closing of the sale contemplated herein, the Debtor shall have no further claim in or to any of the Purchased Assets being transferred to the Purchaser. For the avoidance of any doubt, this paragraph is intended by this Court to afford the greatest relief possible to the Purchaser.

I. The Purchaser is a third-party purchaser and is not a successor in interest to the Debtor. The Purchaser shall have no liability, including, without limitation, as a successor in interest or a successor entity, for any debts, claims or obligations of the Debtor arising prior to the date of closing of the purchase of the Purchased Assets, except as specifically set forth in the APA and this Order.

J. The Purchaser is a good faith purchaser for purposes of § 363(m) of the Bankruptcy Code. The Purchaser is hereby found to have acted in good faith within the meaning of § 363(m) of the Bankruptcy Code at all times through the entry of this Order, and is entitled to the protections of § 363(m).

K. The Assigned Contracts set forth in **Exhibit B** shall be deemed valid and binding and in full force and effect and assumed by the Debtor and sold and assigned to the Purchaser at the Closing, pursuant to §§ 363 and 365.

L. The Debtor is current on all pre-petition and post-petition obligations under the Assigned Contracts and shall remain current through the closing of the sale contemplated herein. Therefore, there are no cure costs associated with the Assigned Contracts and the Debtor is deemed to have satisfied the requirements of § 365, including §§ 365(b)(1)(A) and (B) and 365(f).

M. Upon the closing of the sale of the Purchased Assets under the APA, in accordance with §§ 363 and 365, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract. The Debtor shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

N. Pursuant to §§ 365(b)(1)(A) and (B), except as otherwise provided in this Order, the non-debtor parties to the Assigned Contracts are forever bound by the provisions of this Order.

O. Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable, and all Assigned Contracts shall remain in full force and effect. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties,

charges, or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under § 365(f) and/or are otherwise unenforceable under § 365(e) and no assignment of any Assigned Contract pursuant to the terms of the APA shall in any respect constitute a default under any Assigned Contract. The non-Debtor party to each Assigned Contract shall be deemed to have consented to such assignment under § 365(c)(1)(B), and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof**.**

P.  The Purchaser has satisfied all requirements under §§ 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the Assigned Contracts.

Q.  The stay of orders authorizing the use, sale or lease of property, and the stay of orders authorizing the assignment of executory contracts and leases, as provided for under Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, shall not apply to this Order, and this order shall be effective and enforceable immediately upon its entry.

R.  A reasonable opportunity to object or to be heard with respect to the relief requested and the Sale Motion was afforded to all interested parties and entities, including all third parties asserting interests and claims in, to or against the Purchased Assets. In addition, a reasonable opportunity to object or be heard has been provided to the non-debtor parties with respect to the assumption of the Debtor's executory contracts and unexpired leases.

**AND IT IS SO ORDERED.**

12

# EXHIBIT A

**(Asset Purchase Agreement)**

# EXHIBIT B

**(List of Executory Contracts and Unexpired Leases to be Assumed and Assigned to Purchaser)**