## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Briar's Creek Golf, LLC d/b/a
The Golf Club at Briar's Creek,

Debtor.

Case No. 15-00712-jw

Chapter 11

## EX PARTE ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTOR AND GRANTING PROTECTIONS TO THE PROPOSED PURCHASER

The relief set forth on the following pages, for a total of 6 pages including this page, is hereby **ORDERED**.

_____

**FILED BY THE COURT**
**02/18/2015**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 02/19/2015

1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | Case No. 15-00712-jw |
| Briar's Creek Golf, LLC d/b/a<br>The Golf Club at Briar's Creek, | Chapter 11 |
| Debtor. | |

## EX PARTE ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTOR AND GRANTING PROTECTIONS TO THE PROPOSED PURCHASER

THIS MATTER came before the Court on the Debtor's *Ex Parte* Motion for Order Establishing Bidding and Other Procedures in Connection with the Sale of Assets of the Debtor and Granting Protections to the Proposed Purchaser ("Bid Procedures Motion"), filed February 10, 2015. By separate filing, the Debtor filed a Motion for Order Authorizing: (1) The Sale of Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. § 363 for a purchase price of $11,300,000, which consists of $7,400,000 in cash and assumption of the $3,900,000 secured debt owed to Edward L. Myrick, Sr., plus assumption of the post-closing liabilities under the Debtor's executory contracts (the "Purchase Price"); and (2) Authorizing the Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. §365 ("Sale Motion"). In connection with its acquisition of assets, the Purchaser has also committed to provide $2,000,000 to the new club formed by the Purchaser for its operations and capital improvements and promised to maintain the Debtor's "no tee times" policy. The proposed sale is a sale of substantially all of the Debtor's assets, including real estate, personal property, furniture, fixtures, equipment, inventory, vehicles, contracts, permits, intellectual property, goodwill, and all documents and rights relating thereto as more fully described in the Asset Purchase Agreement (the "APA) filed as **Exhibit A** to the Sale Motion. The assets being sold shall, hereinafter, be referred to as the "Purchased Assets."

The Bid Procedures Motion requests entry of an order: (i) establishing bidding procedures in connection with the proposed sale to the Purchaser and (ii) granting certain purchase offer protections to the Purchaser in the form of a Due Diligence Reimbursement Fee (as defined in more detail in paragraph 2(c) below) in the event that any person other than the Purchaser acquires the Purchased Assets other than due to a breach of the APA by the Purchaser.

The Debtor has represented that the proposed sale, if approved, will essentially allow the Debtor to pay its third party creditors, including its secured creditors, vendors, employees, lessors, and

2

taxing authorities, in full.  From the remaining proceeds, the Debtor has proposed to make a *pari passu* distribution to its remaining creditors, basically consisting of patron golf lenders, resigned refundable golf club members, and present refundable golf club members.  Additionally, the Purchaser proposes to allow the Debtor's active and resigned golf club members in good standing to join Purchaser's new club without new initiation fees or membership deposits.  The Debtor has proposed that the equity interests of its developer and founder members will be extinguished.  The Debtor and Purchaser held a series of pre-petition meetings with the founder, patron, and golf club members in which the Debtor described the filing of the bankruptcy and the proposed sale and sought non-binding expressions of support from its founder, patron, and golf club members.  The Debtor has represented to the Court that responses from the Debtor's founder, patron, and golf club members overwhelmingly support the proposed sale.

It appearing that that the proposed bidding procedures are commercially reasonable and will facilitate the sale process and maximize the value of the Purchased Assets for the estate, that the Due Diligence Reimbursement Fee for the proposed Purchaser described below is appropriate, and that the relief requested in the Bid Procedures Motion is in the best interests of the estate, it is hereby:

ORDERED, ADJUDGED and DECREED as follows:

1.    The Motion is granted in all respects.

2.    The following bidding procedures are approved:

a.    Any bid from any persons or entity other than the Purchaser to purchase the Assets, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:

i.    be in writing;

ii.    contain terms and conditions that are the same, or substantially similar, in all material respects to the APA, other than the identity of the bidder and the amount of the Purchase Price;

iii.    be accompanied by a written acknowledgment and agreement that the terms of the bid are substantially similar in all material respects to the APA, except for the identity of the bidder and the Purchase Price, and that the bidder, should it be declared the winning bidder, will enter into an APA with the Debtor confirming the terms of such winning bid;

iv.    exceed the Purchase Price by at least Five Hundred Thousand and no/100 ($500,000);

v.    include satisfactory evidence of the financial ability of the Qualified Competing Bidder to timely consummate the purchase for cash;

3

vi.        include a deposit of Five Hundred Thousand and no/100 ($500,000) in certified funds payable to the trust account of counsel for the Debtor;  and

vii.        be received by the Debtor's counsel, G. William McCarthy, Jr., Esq. at 1517 Laurel Street, Columbia, SC or at bmmcarthy@mccarthy-lawfirm.com, and the Purchaser's counsel, Julio E. Mendoza, Jr., Esq. at 1230 Main Street, Suite 700, Columbia, SC 29201 or at rmendoza@nexsenpruet.com, no later than the close of business on the day that is at least five (5) business days prior to the scheduled auction and hearing on the Sale Motion (the "Sale Hearing").

b.        Upon timely receipt of a Qualified Competing Bid, the Court will conduct an auction for the Purchased Assets in the courtroom as a part of the Sale Hearing.  No bid shall be considered by the Debtor, after consultation with the secured creditors, unless it is a Qualified Competing Bid. The Debtor and any interested parties with standing shall have the right to object to any bid being deemed, or not being deemed, a "Qualified Competing Bid."  The Court shall decide any dispute over what constitutes a "Qualified Competing Bid," and nothing in this Order shall be read to prohibit the Court from considering higher or otherwise better bids on terms that differ from the Debtor's proposed sale.

c.        Upon receipt of any Qualifying Competing Bid as described in paragraph 2(a) above, the Purchaser shall have the unconditional right to submit an overbid by delivering to the Debtor, no later than the beginning of the auction and Sale Hearing, two signed copies of an amendment to the APA in which the Purchase Price set forth therein at least equals the purchase price offered by the Qualified Competing Bidder pursuant to paragraph 2(a) above; thereby creating at least an additional Two Hundred and Fifty Thousand Dollars ($250,000) for the Debtor's estate because of the difference between the initial topping amount of the Qualified Competing Bid and the amount of the Due Diligence Reimbursement Fee as set out in more detail below.  However, any higher bid of the Purchaser shall be subject to Debtor's acceptance of a still higher and better bid submitted during the Sale Hearing in compliance with this section; provided, however, that such higher and better bid shall equal the sum of: (i) the Purchase Price under the amendment to the APA submitted by the Purchaser; plus (ii) an additional amount of at least Two Hundred Fifty Thousand and no/100 ($250,000) (a "Yet Higher Offer").  In the event of a Yet Higher Offer, Purchaser and each Qualified Competing Bidder shall have the right to continue to submit an overbid in minimum amounts of at least $250,000 more than the previous bid, unless and until such time as the Purchaser or any other Qualified Competing Bidder elects not to make a further overbid.

d.      In the event that any person or entity acquires the Purchased Assets other than due to a breach of the APA by the Purchaser, the Purchaser shall be entitled to payment from the sale proceeds of the Purchased Assets of (1) an amount to reimburse the Purchaser for due diligence costs incurred by the Purchaser (subject to appropriate documentation and approval as set forth below) in presenting and proceeding with its offer and the proposed transactions under the APA, and (2) a break-up fee of $75,000.00 to compensate the Purchaser for its time and efforts (such costs and the break-up fee collectively being defined in the APA as the "Due Diligence Reimbursement Fee"), which Due Diligence Reimbursement Fee shall not exceed $250,000.00 unless approved by the Court, and which payment shall be made at the closing of the sale of the Purchased Assets.  This Due Diligence Reimbursement Fee shall serve as reimbursement for the Purchaser's reasonable expenses incurred in entering into the APA and for the benefit to the Debtor that the APA created in attracting other bids over and above the Purchase Price, which benefit the Debtor acknowledges.

e.      In the event that a Qualified Competing Bid is received, the Debtor will request the Court to approve a "back up" bid.  If the successful bidder is unable to close the sale within fourteen (14) business days of the entry of a final order approving the sale, the successful bidder shall forfeit its deposit made pursuant to paragraph 2(a)(vi) above, and the Debtor shall close the sale of the Assets to the "back up" bidder without the necessity of obtaining another order from this Court.

f.      The deposit made by any Qualified Competing Bidder, pursuant to paragraph 2(a)(vi) above, who is not either the successful purchaser of the Assets or the "back up bidder" shall be returned to such Qualified Competing Bidder within three (3) business days after the Hearing.  The deposit made by any Qualified Competing Bidder that is designated as a "back up" bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the closing of the sale of the Assets to the winning bidder.

g.      Acceptance by the Debtor of a Qualified Competing Bid as a winning bid or a back-up bid shall, in all respects, be subject to the entry of the sale order by the Bankruptcy Court authorizing the Debtor to consummate the sale.

h.      If a Qualified Competing Bid is accepted by the Debtor as the winning bid or back-up bid, those Qualified Competing Bids shall remain open and irrevocable through closing of the sale of the Assets.

i.      Any dispute regarding any aspect of the foregoing bidding procedures shall be resolved by the Bankruptcy Court.

3.    Subject to documentation and further Court approval of the reasonableness of the actual amount of such expenses incurred by the Purchaser upon application of the Purchaser, the Due Diligence Reimbursement Fee is approved.

4.    The Debtor shall take reasonable steps to market the proposed sale and solicit higher or otherwise better offers.

5.    The Debtor shall serve this Order and the Sale Motion on all creditors and parties in interest and any other entities that have shown an interest in purchasing the Purchased Assets.

AND IT IS SO ORDERED.